# United States Court of Appeals

*for the*

# Federal Circuit

ANGIOSCORE, INC.,

*Plaintiff-Appellee,*

– v. –

TRIREME MEDICAL, LLC, QUATTRO VASCULAR PTE LTD.,
QT VASCULAR LTD. and EITAN KONSTANTINO,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF CALIFORNIA IN CASE NO. 4:12-CV-3393
HONORABLE YVONNE GONZALEZ ROGERS

## PETITION FOR REHEARING *EN BANC*

PETER J. ARMENIO, P.C.
WILLIAM B. ADAMS
CLELAND B. WELTON II
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

ROBERT P. FELDMAN
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
(650) 801-5000

*Attorneys for Plaintiff-Appellee AngioScore, Inc.*

August 22, 2016

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Plaintiff-Appellee AngioScore, Inc. certifies the following:

**1.    The full name of every party or amicus represented by me is:**

AngioScore, Inc.

**2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:**

Not applicable.

**3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:**

AngioScore, Inc. is a wholly owned subsidiary of The Spectranetics Corporation. No publicly held company owns 10 percent or more of The Spectranetics Corporation's stock.

**4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or are expected to appear in this court are:**

QUINN EMANUEL URQUHART & SULLIVAN, LLP: Kathleen M. Sullivan, Peter J. Armenio, William B. Adams, Margret M. Caruso, Diane M. Doolittle, Laura L. Fairneny, Robert P. Feldman, Claire D. Hausman, Rachel H. Kassabian, Diem-Suong T. Nguyen, Matthew D. Robson, Meredith M. Shaw, Margaret H. Shyr, Nathan N. Sun, Cleland B. Welton II, Rebecca A. Bers (no longer with the firm), Jennifer J. Matystik (no longer with the firm), Kimball D. Parker (no longer with the firm)

SHEPPARD, MULLIN, RICHTER & HAMILTON LLP: James W. Geriak, Andre De La Cruz (no longer with the firm), Steven M. Hanle (no longer with the firm)

FARBER LLC: Mark Farber

DICKSTEIN SHAPIRO LLP: Allan W. Jansen (no longer with the firm), Charles A. Kertell (no longer with the firm), Ehab M. Samuel (no longer with the firm)

LAW OFFICES OF ROBERT E. WHITE: Robert Edward White

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTEREST ..............................................................i

TABLE OF AUTHORITIES ............................................................. iii

RULE 35(b)(2) STATEMENT ..............................................................1

INTRODUCTION .................................................................................1

FACTUAL STATEMENT ......................................................................3

REASONS FOR GRANTING THE PETITION.......................................8

I.    *EN BANC* REVIEW IS WARRANTED BECAUSE THE PANEL'S NARROW CONSTRUCTION OF 28 U.S.C. § 1367(A) CONFLICTS WITH DECISIONS OF THE SUPREME COURT AND OTHER COURTS OF APPEALS ................................................................8

    A.    The Panel's "Transaction Or Event" Test Conflicts With *Gibbs* And Decisions Of The First, Second, Third, And Seventh Circuits ..................................................................................8

    B.    The District Court Plainly Had Supplemental Jurisdiction Here Under The Proper Construction Of Section 1367(a) .........................13

II.   *EN BANC* REVIEW IS WARRANTED BECAUSE THE PANEL DECISION INVOLVES A QUESTION OF EXCEPTIONAL IMPORTANCE REGARDING FEDERAL COURT JURISDICTION.......14

CONCLUSION ...................................................................................15

ADDENDUM

PROOF OF SERVICE

# TABLE OF AUTHORITIES

**Page**

## Cases

*Ambromovage v. United Mine Workers of Am.*,
  726 F.2d 972 (3d Cir. 1984) ...............................................................12

*Baer v. First Options of Chicago, Inc.*,
  72 F.3d 1294 (7th Cir. 1995) .......................................................10, 11

*Broz v. Cellular Info. Sys., Inc.*,
  673 A.2d 148 (Del. 1996) ..................................................................4

*Channell v. Citicorp Nat'l Servs., Inc.*,
  89 F.3d 379 (7th Cir. 1996) ..............................................................11

*Global NAPs, Inc. v. Verizon New Eng. Inc.*,
  603 F.3d 71 (1st Cir. 2010)..........................................................11, 14

*Godin v. Schencks*,
  629 F.3d 79 (1st Cir. 2010)...............................................................11

*Guth v. Loft, Inc.*,
  5 A.2d 503 (Del. 1939) ......................................................................4

*Highway Equip. Co. v. FECO, Ltd.*,
  469 F.3d 1027 (Fed. Cir. 2006) .........................................................12

*Hurn v. Oursler*,
  289 U.S. 238 (1933).............................................................................9

*Jones v. Ford Motor Credit Co.*,
  358 F.3d 205 (2d Cir. 2004) ........................................................11, 14

*Lyndonville Sav. Bank & Trust Co. v. Lussier*,
  211 F.3d 697 (2d Cir. 2000) .............................................................12

*Palmer v. Hosp. Auth. of Randolph Cty.*,
  22 F.3d 1559 (11th Cir. 1994) ..........................................................12

*Sanchez & Daniels v. Koresko*,
  503 F.3d 610 (7th Cir. 2007) ............................................................10

*In re: TriReme Med., LLC*,
    No. 15-128 (Fed. Cir. Apr. 2, 2015) ....................................................................5

*United Mine Workers of America v. Gibbs*,
    383 U.S. 715 (1966)............................................. 1, 2, 3, 5, 7, 8, 9, 11, 12, 13, 14

*Wisey's #1 LLC v. Nimellis Pizzeria LLC*,
    952 F. Supp. 2d 184 (D.D.C. 2013)................................................................7, 8

## Constitution, Statutes, and Rule

U.S. CONST. art. III................................................................8, 9, 10, 11, 12

28 U.S.C. § 1338(a) .........................................................................10, 15

28 U.S.C. § 1338(b) ...............................................................................15

28 U.S.C. § 1367 ..............................................................3, 10, 11, 12, 14

28 U.S.C. § 1367(a) .................................................1, 2, 5, 8, 9, 13, 14

FED R. APP. P. 35(b)(2) .............................................................................1

Fed. R. CIV. P. 13(b)............................................................................11

## Other Authorities

BLACK'S LAW DICTIONARY (9th ed. 2009) ...............................................7

16 MOORE'S FEDERAL PRACTICE § 106.25 (3d ed.)................................12

13D  WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 3567.1 (3d ed.) .....12, 13

## <u>RULE 35(b)(2) STATEMENT</u>

Based on my professional judgment, I believe the panel decision is contrary

to the decision of the Supreme Court of the United States in *United Mine Workers*

*of America v. Gibbs*, 383 U.S. 715 (1966), and that this appeal requires an answer

to the following precedent-setting question of exceptional importance: Whether 28

U.S.C. § 1367(a) provides supplemental jurisdiction over a nonfederal claim only

if it arises from the same "transaction or event" as a federal claim, as the panel

decision holds, or whether instead supplemental jurisdiction exists where a

nonfederal claim is so related to a federal claim that they would ordinarily be tried

together even if they do not arise from the same "transaction or event," as the

Courts of Appeals for the First, Second, Third, and Seventh Circuits hold.

/s/ Robert P. Feldman
*Counsel of Record for Plaintiff-*
*Appellee AngioScore, Inc.*

## <u>INTRODUCTION</u>

The panel decision (per Hughes, J., joined by Plager & Reyna, JJ.) warrants

*en banc* review, for it conflicts with Supreme Court and sister-circuit precedent on

an exceptionally important question of federal subject-matter jurisdiction. The

panel vacated a $20 million judgment in favor of Plaintiff-Appellee AngioScore,

Inc. and against Defendants-Appellants TriReme Medical, LLC, Quattro Vascular

Pte Ltd., QT Vascular Ltd. ("Corporate Defendants") and Eitan Konstantino,

holding that 28 U.S.C. § 1367(a) did not supply supplemental jurisdiction over the

1

state-law claims underlying the judgment—even though those claims and AngioScore's federal patent-infringement claim all centered on a medical device produced by Corporate Defendants and developed by Konstantino while he sat on AngioScore's Board of Directors. The district court ruled that jurisdiction existed because the claims were so related that they formed a single "case" jointly triable in one federal proceeding. But the panel reversed, holding that jurisdiction does not exist under § 1367(a) unless the state-law and federal claims arise from the same "transaction or event" (Add. 6, 7)—an argument Corporate Defendants raised for the first time in reply.

No other court of appeals has adopted the "transaction or event" test, which the panel drew from a district-court decision and a dictionary definition. That test is contrary to the Supreme Court's authoritative articulation of federal pendent jurisdiction in *Gibbs*, 383 U.S. 715. *Gibbs* holds that the existence of supplemental jurisdiction turns on a pragmatic inquiry into whether claims form a single "case," not a mechanical comparison of claim elements. And consistent with *Gibbs*'s reasoning, at least four courts of appeals have expressly *rejected* a "transaction or occurrence" test. The panel decision conflicts with all of this precedent, and embraces a test for supplemental jurisdiction unique among the circuits.

The issue, moreover, is exceptionally important. The panel's decision will have the untoward effect of multiplying litigation and forcing undue expenditure of

judicial resources by requiring patent plaintiffs to split off nonfederal claims into separate lawsuits. This is the *opposite* of what Congress intended in enacting § 1367, and it is wholly inconsistent with the considerations underlying the Supreme Court's decision in *Gibbs*. *En banc* review is warranted.

## FACTUAL STATEMENT

1.      AngioScore develops specialty angioplasty balloon catheters, which are used to treat blocked blood vessels. *See* A133. An ordinary balloon catheter (a "plain old balloon angioplasty" catheter or "POBA") consists of a catheter tube with a balloon at one end. After the catheter is inserted into a blood vessel, the balloon is inflated to compress a blockage and open the vessel before being deflated so that the device can be removed. A50069. AngioScore's product (AngioSculpt) improves on a POBA by adding a metal cage to the exterior of the balloon. *See* A44; A66; A133. The cage expands with the balloon, pressing into ("scoring") the blockage and more effectively clearing the vessel. *See* A66-67.

Konstantino co-conceived of AngioSculpt in 2002, and co-founded AngioScore in 2003. A50068; A51322. Konstantino remained a member of its Board until February 2010 (*see* A128), and acknowledged that as a Director, he was "subject to fiduciary duties" under Delaware law (*see* A147). Those duties required him to maintain "undivided and unselfish loyalty to the corporation," and obligated him "to refrain from doing anything … to deprive [AngioScore] of profit

or advantage which his skill and ability might properly bring to it." *Guth v. Loft, Inc.*, 5 A.2d 503, 510 (Del. 1939). In particular, as the district court ruled (A82), Konstantino was obligated to disclose and offer to AngioScore any business opportunity that might have fallen within the company's line of business. *See Broz v. Cellular Info. Sys., Inc.*, 673 A.2d 148, 155 (Del. 1996).

**2.** With AngioScore's approval, Konstantino co-founded TriReme to develop bifurcation stents (which are outside AngioScore's line of business). *See* A67-68; A146. But in December 2011, TriReme launched "Chocolate," a specialty balloon catheter that competes with AngioSculpt. A50336; A80561-62. Chocolate, like AngioSculpt, adds a nitinol cage to a POBA. *See* A133-34.

AngioScore thereafter filed this action (A321-28), alleging that Chocolate infringed U.S. Patent No. 7,691,119 (the "'119 patent"). Through discovery on its patent claim, AngioScore learned that Konstantino had conceived and developed Chocolate while he was still an AngioScore Director, subject to fiduciary duties. *See* A36, A129-31. Konstantino never disclosed Chocolate to AngioScore (*see* A152), but instead *concealed* the opportunity—keeping it for himself and TriReme (*see* A97-99; A128; A152-63). After discovering the truth, AngioScore amended its complaint to assert Delaware-law claims that Konstantino (aided and abetted by Corporate Defendants) had breached his fiduciary duty of disclosure, as well as a California statutory claim of unfair competition. A23-25; A2541-45.

**3.**    Defendants moved to dismiss the state-law claims for lack of subject-matter jurisdiction.  The U.S. District Court for the Northern District of California (Gonzalez Rogers, J.) denied the motion, explaining that it had jurisdiction under § 1367(a) because "AngioScore 'would ordinarily be expected to try … all [of its claims] in one judicial proceeding.'"    A37 (quoting *Gibbs*, 383 U.S. at 725). Specifically, Chocolate is "[a]t the heart of this case":  How it works (namely, whether it clears blockages in part by "scoring" them) was central both to whether it infringed the '119 patent, and to whether it was within AngioScore's line of business such that AngioScore had an interest in the opportunity (two *necessary elements* of the fiduciary-duty claims).  A36-37.  In addition, "Konstantino's role and relationship to AngioScore" were significant both to AngioScore's willful-infringement claim and to whether Konstantino breached his fiduciary duties.  *Id.* Thus, "witnesses and documents used to support the claims substantially overlap," and crucial evidence for the state-law claims was "produced in the context of patent discovery."  A37; *see also* A32-33; A76; A99.  The claims also involved similar proof of damages.  *Id.*  In sum, the claims were "fundamentally related"; indeed, Defendants' contrary position "strain[ed] credulity."  A36-37.

Defendants thereafter unsuccessfully petitioned for a writ of mandamus directing dismissal of the state-law claims.  *In re: TriReme Med., LLC*, No. 15-128, ECF 18 (Fed. Cir. Apr. 2, 2015) (Wallach, J., joined by Prost, C.J., & Reyna, J.).

5

**4.**    One month before the trial date, the district court bifurcated trial of the state-law claims (which were tried to the bench) from the patent claims—citing convenience, efficiency, and a desire not to unduly inconvenience a jury.  *See* A38.

After the bench trial, the district court found for AngioScore on its fiduciary-duty claims in a 110-page decision.  A65-174.  Among other things, the court ruled that Konstantino (aided and abetted by Corporate Defendants, A99-110) had breached his fiduciary duties and unfairly competed by taking the Chocolate opportunity for himself rather than offering it to AngioScore (A76-94; A111-12).  The court discussed the extensive evidence as to whether Chocolate is a "scoring device" (A133-36), ultimately finding that it is not such a device but was nonetheless within AngioScore's line of business and that AngioScore had an interest and expectancy in the opportunity (A84-92).    The court ordered Konstantino to disgorge the benefits he had obtained from his breach, and awarded AngioScore over $20 million in lost profits.  A120-27.

The case proceeded to trial of AngioScore's patent claim, at which the jury found for Defendants.  But the course of the patent trial confirmed the substantial factual and evidentiary overlaps between the claims.  The two trials featured many of the same witnesses and documents.[1]  In particular, the patent trial (like the

---

[1] *See, e.g.*, A50066-67, A90125-26 (Andrews); A50523-24, A090151-52 (Bleam); A50555-56, A91168 (Trotter); A50132-33, A90245-46 (Konstantino); A50846-47,

fiduciary-duty trial) featured extensive proof concerning Chocolate's design, specifically whether it "scores" arterial blockages, as well as its competition with AngioSculpt.[2] They also involved overlapping remedies evidence.[3]

The district court entered judgment (A19-22), and Defendants appealed.

**5.**    In a decision issued July 21, 2016, the panel vacated the district court's judgment with respect to the state-law claims. Add. 1-9. Adopting a rule that Corporate Defendants had proposed for the first time in their reply brief (*see* ECF 75, at 7), the panel held that an "operative fact" under *Gibbs* "is one 'that constitutes the transaction or event on which a claim or defense is based.'" Add. 6 (quoting *Wisey's #1 LLC v. Nimellis Pizzeria LLC*, 952 F. Supp. 2d 184, 190 (D.D.C. 2013) (in turn quoting BLACK'S LAW DICTIONARY 670 (9th ed. 2009))).

Applying this test, the panel held that "no common nucleus of operative fact exists" between AngioScore's state-law and federal claims, because whereas the "patent infringement claim relates generally to whether the Chocolate device satisfies the '119 patent's claim limitations," the "state-law claims relate solely to

---

A90232-33 (Feld); A51033-34, A90238 (Pizarro); A50980-81, A90238 (Brosh); A50323-24, A90685-86 (Haig); A50979, A90685 (Dreaden); *compare* Dist. Ct. ECF 629-30 *with* Dist. Ct. ECF 804-05.

[2] *See, e.g.*, A50333-50, A50355-57, A50408-10, A50520, A50538-39, A51094-99, A51377 (bench trial); A90166-68, A90310-14, A90456-57, A90715, A90886-87, A90963-65 (jury trial).

[3] *See, e.g.*, A50744, A51228 (bench trial); A90693-94, A91171-72 (jury trial).

whether the Chocolate device was a 'corporate opportunity.'" Add. 6-7. The panel acknowledged that "the district court was required to have a general understanding of how Chocolate operated to determine if Chocolate fell within AngioScore's line of business," but stated that this was "simply background information and not the 'transaction or event on which the claims are based.'" Add. 7 (quoting *Wisey's*, 952 F. Supp. 2d at 190). The panel held jurisdiction was lacking over the unfair-competition claim, without further analysis. Add. 7-8 n.1.

## REASONS FOR GRANTING THE PETITION

I. *EN BANC* REVIEW IS WARRANTED BECAUSE THE PANEL'S NARROW CONSTRUCTION OF 28 U.S.C. § 1367(A) CONFLICTS WITH DECISIONS OF THE SUPREME COURT AND OTHER COURTS OF APPEALS

### A. The Panel's "Transaction Or Event" Test Conflicts With *Gibbs* And Decisions Of The First, Second, Third, And Seventh Circuits

Section 1367(a) extends supplemental jurisdiction to "all other claims" that "form part of the same case or controversy under Article III of the United States Constitution" as a claim over which a district court has original jurisdiction. 28 U.S.C. § 1367(a). The panel held that to satisfy this standard, state-law and federal claims must share facts "'that constitute[] the transaction or event on which a claim or defense is based'" (Add. 6 (quoting *Wisey's*, 952 F. Supp. 2d at 190)), such that the claim elements must overlap (*see* Add. 7). That holding conflicts with the Supreme Court's canonical decision in *Gibbs*, and the decisions of at least four other courts of appeals that have rejected the identical "transaction or occurrence"

test.  The panel is alone in adopting such a narrow test, warranting *en banc* review.

1.    In holding that § 1367(a) provides supplemental jurisdiction over only those state-law claims that arise from the same transaction or event as a federal claim (Add. 6-7), the panel decision conflicts with the constitutional test set forth in *Gibbs*.  There, the Supreme Court held that two claims form part of the "same case or controversy" under Article III (and thus now § 1367(a)) where they have a "common nucleus of operative fact" such that the parties "would ordinarily be expected to try [all of the claims] in one judicial proceeding," based on "considerations of judicial economy, convenience and fairness to litigants."  383 U.S. at 725-26.  The Court *rejected* as "unnecessarily grudging" a rule that would have limited pendent jurisdiction to groups of claims that are "'little more than the equivalent of different epithets to characterize the same group of circumstances.'" *Id.* at 724-25 (quoting *Hurn v. Oursler*, 289 U.S. 238, 246 (1933)).  The Court thus made clear that the jurisdictional rule does *not* depend on whether the elements of the state-law and federal claims overlap, but rather on whether the claims are sufficiently related to be treated as a single "case" and tried in one proceeding. The panel's narrow "transaction or event" test disregards and conflicts with *Gibbs*'s holding that federal jurisdiction extends to an entire "case," not just a single transaction.  Rehearing *en banc* should be granted to address this conflict.

2.    The panel's adoption of a "transaction or event" test also conflicts

with the decisions of four circuits that have expressly held that the identical "transaction or occurrence" test is not consistent with the "common nucleus of operative fact" standard.

The Seventh Circuit holds that, since § 1367 embraces the "common nucleus of operative fact" standard, "[t]he somewhat narrower 'same transaction or occurrence' test that was used before the adoption of § 1367 *no longer governs*." *Sanchez & Daniels v. Koresko*, 503 F.3d 610, 614 (7th Cir. 2007) (emphasis added). As that court explained, Congress affirmatively "*rejected the 'transaction or occurrence' standard* for determining the scope of supplemental jurisdiction," which had appeared in a draft bill, choosing instead to authorize jurisdiction "coextensive with the 'case or controversy' requirement of Article III." *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995). Congress sought to avoid "forc[ing] a litigant to choose from undesirable alternatives": under a narrow test he could either "deprive the federal forum of the opportunity to hear important questions of federal law" by joining all claims in state court, or else would have to "split his case between the state and federal courts, thereby wasting resources with dual litigation and creating complex questions of issue preclusion." *Id.*[4] Congress thus extended federal jurisdiction to the limits of Article III, such

---

[4]  The state-court alternative is not even available for patent claims. *See* 28 U.S.C. § 1338(a); *infra*, at 15.

10

that a "loose factual connection between the claims is generally sufficient." *Id.*; *see also, e.g.*, *Channell v. Citicorp Nat'l Servs., Inc.*, 89 F.3d 379, 385-86 (7th Cir. 1996) (upholding jurisdiction over state-law claims arising from lease terminations although "acts creating the claims differ[ed]" from acts creating federal claim).

The First Circuit—recognizing that "[n]o Supreme Court case ha[s] ever established the same transaction-or-occurrence test as the boundary of Article III case-or-controversy requirement"—likewise holds that the "common nucleus of operative fact" standard "is somewhat broader than the transaction-or-occurrence test." *Global NAPs, Inc. v. Verizon New Eng. Inc.*, 603 F.3d 71, 87-88 (1st Cir. 2010). Whether "state-law claims … arise out of the same transaction as [a] federal claim" is not dispositive, because "*that is not the test*." *Godin v. Schencks*, 629 F.3d 79, 83 (1st Cir. 2010) (emphasis added). Rather, § 1367 "abolish[ed]" the restrictive rule under which claims could be asserted as "ancillary" to a federal claim only if they arose from the "same transaction or occurrence," replacing it with the permissive and pragmatic *Gibbs* rule. *Global NAPs*, 603 F.3d at 87-88.

The Second Circuit likewise holds that a state-law counterclaim that is only *permissive* under Fed. R. Civ. P. 13(b) may be part of the same "case" as a federal claim (and thus susceptible of § 1367 jurisdiction) even though *by definition* the two do not arise from the same "transaction or occurrence." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 210, 213-14 (2d Cir. 2004).

11

And the Third Circuit has held the same for *over 30 years*: "Several transactions may share an intersection of 'operative facts,'" and "the two tests— 'same transaction or occurrence' and 'common nucleus of operative fact'—need not map the same landscape." *Ambromovage v. United Mine Workers of Am.*, 726 F.2d 972, 990 (3d Cir. 1984).[5]

**3.**     The panel decision also conflicts with the leading commentators, who agree that it is "incorrect[]" to "equat[e] *Gibbs* with the transaction or occurrence test of the Civil Rules" since "*Gibbs* is broader" and focuses on defining Article III "cases" in terms of practicalities and judicial economy.   13D WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 3567.1 (3d ed.).   The Article III test is not equivalent to "Rule 13's 'same transaction or occurrence'" standard, and in fact the latter was "specifically replaced in [§ 1367] by use of the 'same case or controversy' test."   16 MOORE'S FEDERAL PRACTICE § 106.25 (3d ed.).

Rehearing *en banc* should be granted to address these conflicts.

---

[5]   No court of appeals, including those cited by the panel (Add. 6), has adopted a "transaction or event" rule. *See Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1038-39 (Fed. Cir. 2006) (no "common nucleus of operative fact"; claims arose from different products and conduct); *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 705 (2d Cir. 2000) (no jurisdiction; state-law claims arose from contracts while federal claim concerned only prior restitution order); *Palmer v. Hosp. Auth. of Randolph Cty.*, 22 F.3d 1559, 1563 (11th Cir. 1994) (upholding jurisdiction; claims were "certainly part of the same case or controversy").

## B.    The District Court Plainly Had Supplemental Jurisdiction Here Under The Proper Construction Of Section 1367(a)

The "common nucleus of operative fact" test is "broad and fact-specific," and must "be applied with a pragmatic appreciation of the efficiency promoted by supplemental jurisdiction," WRIGHT ET AL. § 3567.1, in particular the "considerations of judicial economy, convenience and fairness to litigants" highlighted by *Gibbs*, 383 U.S. at 725-26.

Under this standard, the district court was plainly correct to find (A35-40) that AngioScore's state-law and federal claims form a single "case" because they could be (and were) fairly and efficiently tried together in a single proceeding.  As the court explained (A36-37), Chocolate is "the heart of this case," and the state-law and federal claims are "fundamentally related."  Crucial evidence giving rise to the state-law claims only came to light through patent discovery.  A36.  In fact, *each* claim "*turn[ed] on* proof concerning *exactly* what the Chocolate [device] is, how it was developed, and its import … to AngioScore," as well as "Konstantino's role and relationship to AngioScore" (A37 (emphasis added); *see supra*, at 3-7)—proof not of mere background facts, but of the *elements* of the state-law claims (*see supra*, at 5).  Moreover, AngioScore's unfair-competition claim was based on *both* Konstantino's misappropriation *and* the later exploitation of the Chocolate opportunity—demonstrating that this case concerns a single continuous course of directly related conduct.  *See* A2543-45; A111-12.

13

These factual and evidentiary overlaps, concerning issues that were *central* to *all* of AngioScore's claims, show that this is a single "case" in which all claims arise from a "common nucleus of operative fact" relating to the parties' dispute over rights in and to Chocolate, and Konstantino's conduct in keeping the opportunity for himself before using it to compete against AngioScore. All the claims were reasonably and properly tried together in a single federal case.[6] Thus, under the proper construction of § 1367(a), AngioScore was not required to split its claims, thereby compelling two courts to manage and try parallel lawsuits over closely related subject matter.[7]

## II. *EN BANC* REVIEW IS WARRANTED BECAUSE THE PANEL DECISION INVOLVES A QUESTION OF EXCEPTIONAL IMPORTANCE REGARDING FEDERAL COURT JURISDICTION

*En banc* review is warranted apart from the above conflicts because the issue presented is exceptionally important in its own right. Section 1367 reflects Congress's judgment that federal jurisdiction should be exercised broadly and pragmatically so long as there is a federal claim in the case, in order to preserve

---

[6]  The bifurcation of trial is immaterial: the claims *were* related enough to be tried in "one judicial proceeding," *Gibbs*, 383 U.S. at 725, and the district court "was prepared to try all the claims" together before deciding that efficiency and avoiding burden to jurors (*not* dissimilarity of subject matter) warranted bifurcation (A38).

[7]  *See, e.g.*, *Global NAPs*, 603 F.3d at 85, 88 (state alter-ego claim shared "common nucleus of operative fact" with preemption claim; all related to "what fees the parties owe each other"); *Jones*, 358 F.3d at 213-14 (state debt-collection claims shared "common nucleus of operative fact" with federal discrimination claim; all "originate[d]from the Plaintiffs' decisions to purchase Ford cars").

judicial resources and ensure fairness to litigants—including by avoiding complex issue-preclusion questions that may arise when related claims are tried in different courts. *See supra*, at 10-12. These concerns are especially strong in patent cases, since 28 U.S.C. § 1338(a) bars a plaintiff from joining patent claims with state-law claims in state court. Indeed, Congress has long recognized that federal jurisdiction should extend to claims like AngioScore's by providing for *original* jurisdiction of patent-adjacent state-law unfair-competition claims under § 1338(b). Supplemental jurisdiction should not depend on whether the federal claim involves patent law, and the standard should certainly not be *more* demanding in such cases.

This Court's jurisdictional standard is important not only to this case (in which the panel's decision voids an entire trial) but also in the many future cases in which parties may seek to litigate competition and corporate-governance claims together with patent claims. Such cases are particularly likely to involve startup companies, which will be particularly sensitive to the increased litigation costs that would come with a narrow circumscription of federal jurisdiction.

At minimum, rehearing *en banc* is warranted so that the full Court may consider whether the "transaction or event" test governs supplemental jurisdiction, and thereby provide much-needed guidance to district courts and patent litigants.

## CONCLUSION

The petition should be granted.

Dated: August 22, 2016

Peter J. Armenio, P.C.
William B. Adams
Cleland B. Welton II
QUINN EMANUEL URQUHART &
  SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Respectfully submitted,

/s/ Robert P. Feldman
Robert P. Feldman
QUINN EMANUEL URQUHART &
  SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
(650) 801-5000
bobfeldman@quinnemanuel.com

*Attorneys for Plaintiff-Appellee AngioScore, Inc.*

**ADDENDUM**

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**ANGIOSCORE, INC.,**
*Plaintiff-Appellee*

**v.**

**TRIREME MEDICAL, LLC, QUATTRO VASCULAR PTE LTD., QT VASCULAR LTD., EITAN KONSTANTINO,**
*Defendants-Appellants*

_____

2016-1126, 2016-1142

_____

Appeals from the United States District Court for the Northern District of California in No. 4:12-cv-03393-YGR, Judge Yvonne Gonzalez Rogers.

_____

Decided: July 21, 2016

_____

ROBERT PAUL FELDMAN, Quinn Emanuel Urquhart & Sullivan, LLP, Redwood Shores, CA, argued for plaintiff-appellee. Also represented by WILLIAM ADAMS, PETER J. ARMENIO, CLELAND B. WELTON, II, New York, NY.

LISA SCHIAVO BLATT, Arnold & Porter LLP, Washington, DC, argued for defendants-appellants Trireme Medical, LLC, Quattro Vascular Pte Ltd., QT Vascular Ltd.

Also represented by DAVID A. CAINE, PALO ALTO, CA; DAVID S. STEUER, STEVEN GUGGENHEIM, DYLAN JAMES LIDDIARD, CHERYL W. FOUNG, Wilson, Sonsini, Goodrich & Rosati, PC, Palo Alto, CA.

ADRIAN MARY PRUETZ, Glaser, Weil, Fink, Jacobs, Howard, Avchen & Shapiro LLP, Los Angeles, CA, argued for defendant-appellant Eitan Konstantino. Also represented by MIEKE K. MALMBERG, RICHARD W. BUCKNER.

————————————

Before REYNA, PLAGER, and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge.*

AngioScore, Inc. sued the defendant-appellants (TriReme Medical, LLC, Quattro Vascular PTE Ltd., QT Vascular Ltd., and Eitan Konstantino) for patent infringement, breach of fiduciary duty, aiding and abetting, and unfair competition. After separate trials on the patent and state-law claims, the district court entered final judgment for Defendants on the patent claim, for AngioScore on the state-law claims, and denied Corporate Defendants' (TriReme Medical, LLC, Quattro Vascular PTE Ltd., and QT Vascular Ltd.) request for attorneys' fees under 35 U.S.C. § 285. Because we find that the district court improperly exercised supplemental jurisdiction over the state-law claims but did not err in denying attorneys' fees, we reverse-in-part, affirm-in-part, vacate-in-part, and remand with instructions to dismiss the state-law claims for lack of jurisdiction.

I

In March 2003, Eitan Konstantino co-founded AngioScore to develop and market a new angioplasty balloon catheter that he had co-invented, called AngioSculpt. Dr. Konstantino initially served as AngioScore's president and sat on its board of directors. As a condition of his

employment, Dr. Konstantino and AngioScore entered into an assignment agreement, in which Dr. Konstantino agreed to assign AngioScore his rights in any inventions that he conceived of or developed during his employment.

In November 2005, the board of directors began gradually reducing Dr. Konstantino's role at AngioScore, and on April 1, 2007, AngioScore terminated Dr. Konstantino's employment, and, thereby, terminated the assignment agreement. Dr. Konstantino remained on AngioScore's board as an outside board member charged with representing certain minority investors.

While AngioScore was reducing his role, Dr. Konstantino increased his involvement with TriReme Medical, LLC, a separate company that he had cofounded. TriReme initially focused on developing endovascular bifurcation stents and delivery systems for bifurcation stents, which differs from the technology used in angioplasty balloons, e.g., AngioScore's AngioSculpt product. But, in the fall of 2009, Dr. Konstantino and Tanhum Feld conceived of a new angioplasty balloon catheter which they named Chocolate. On October 9, 2009, Dr. Konstantino filed a provisional patent application for Chocolate, naming himself and Mr. Feld as coinventors. Thereafter, Dr. Konstantino sought funding from outside investors to bring the device to market while Mr. Feld worked on the design and development of the device.

On February 3, 2010, Dr. Konstantino informed Tom Trotter, AngioScore's CEO, that TriReme would be "moving into" the specialty balloon market, but did not specifically discuss Chocolate. J.A. 51342. The next day, Mr. Trotter demanded that Dr. Konstantino resign from AngioScore's board because he felt that "the development or marketing of an angioplasty device of any kind for the treatment of peripheral artery disease which could compete with AngioScore has created a serious conflict of

interest for [Dr. Konstantino] as a Board Member of AngioScore." J.A. 80351. Dr. Konstantino attempted to clarify that TriReme had "not made any decision" regarding the specialty balloon market, and that it "may never happen, depending on the investors coming to the table . . . ." J.A. 80369. Ultimately, Dr. Konstantino resigned from AngioScore's board, effective February 5, 2010.

Dr. Konstantino and Mr. Feld assigned their rights in Chocolate to TriReme's corporate affiliate, Quattro Vascular PTE Ltd., on June 1, 2010. A non-provisional patent application for Chocolate was filed in March 2011, and Defendants began selling it in the United States in December 2011.

On June 29, 2012, AngioScore sued Defendants for infringing United States Patent No. 7,691,119 (the '119 patent) by making and selling Chocolate. AngioScore later added state-law claims for breach of fiduciary duty, aiding and abetting, and unfair competition. AngioScore asserted that Dr. Konstantino violated Delaware's corporate opportunity doctrine by "fail[ing] to disclose and offer to AngioScore the business opportunity relating to the Chocolate device." J.A. 2541. Further, AngioScore contended that the Corporate Defendants aided and abetted Dr. Konstantino's alleged breach of fiduciary duty, which constituted unfair competition. J.A. 2542–43.

Defendants moved to dismiss the state-law claims for lack of subject matter jurisdiction. In denying the motion to dismiss, the district court concluded that the exercise of jurisdiction was proper under 28 U.S.C. § 1367 because "the core of this case concerns the Chocolate device," as both the federal and state-law claims "turn on proof concerning exactly what [] Chocolate is, how it was developed, and its import relative to AngioScore both in terms of lost profits if found to be infringing, or its value as a potential corporate opportunity." J.A. 37.

Following a bench trial on the state-law claims, the district court issued Findings of Fact and Conclusions of Law, ruling in favor of AngioScore. The district court found that Chocolate was a corporate opportunity and Dr. Konstantino breached his fiduciary duty by failing to offer it to AngioScore. The district court awarded AngioScore $20,034,000 in lost profits. A separate trial was held on AngioScore's federal patent infringement claim. The jury found that Chocolate did not infringe any asserted claim of the '119 patent and that all of AngioScore's asserted claims were invalid. The district court subsequently denied Corporate Defendants' request for attorneys' fees under 35 U.S.C. § 285.

Defendants appeal the district court's exercise of jurisdiction over the state-law claims and the denial of attorneys' fees under 35 U.S.C. § 285. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II

The threshold question here is whether the district court properly exercised jurisdiction over the state-law claims. We review de novo a district court's exercise of supplemental jurisdiction over state-law claims under 28 U.S.C. § 1367(a). *Voda v. Cordis Corp.*, 476 F.3d 887, 892 (Fed. Cir. 2007).

This court follows the "'fundamental precept that federal courts are courts of limited jurisdiction,' empowered to act only within the bounds of Article III of the United States Constitution." *Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1032 (Fed. Cir. 2006) (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978)). If diversity jurisdiction is lacking and the case involves state-law claims that are not independently subject to federal jurisdiction, a district court may exercise supplemental jurisdiction over those state-law claims only if they "are so related to claims in the action within such original jurisdiction that they form part of the same

case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); *see also Highway Equip. Co.*, 469 F.3d at 1038. "For this relatedness requirement to be satisfied, '[t]he state and federal claims must derive from a common nucleus of operative fact' such that they would ordinarily be expected to be tried in one proceeding." *Highway Equip. Co.*, 469 F.3d at 1038 (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).

An "operative fact" is one "that constitutes the transaction or event on which a claim or defense is based." *Wisey's #1 LLC v. Nimellis Pizzeria LLC*, 952 F. Supp. 2d 184, 190 (D.D.C. 2013) (quoting BLACK'S LAW DICTIONARY 670 (9th ed. 2009)). Generally, claims arise out of a common nucleus of operative fact when they "involve the same witnesses, presentation of the same evidence, and determination of the same, or very similar, facts." *Palmer v. Hosp. Auth. of Randolph Cty.*, 22 F.3d 1559, 1563–64 (11th Cir. 1994); *see also Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000) (a sufficient relationship will be found if "the facts underlying the federal and state claims substantially overlap[] . . . or where presentation of the federal claim necessarily b[rings] the facts underlying the state claim before the court"). However, state-law claims that "only 'relate generally' to federal claims through a broader dispute and do not share any operative facts are insufficient for supplemental jurisdiction." *Wisey's #1 LLC*, 952 F. Supp. 2d at 190 (quoting *Chelsea Condo. Unit Owners Ass'n v. 1815 A St., Condo. Grp., LLC*, 468 F. Supp. 2d 136, 141 (D.D.C. 2007)).

Here, no common nucleus of operative fact exists. The patent infringement claim relates generally to whether the Chocolate device satisfies the '119 patent's claim limitations, *see Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 374 (1996) ("Victory in an infringement suit requires a finding that the patent claim covers the alleged

infringer's product or process, which in turn necessitates a determination of what the words in the claim mean.") (internal quotations and citations omitted), while the state-law claims relate solely to whether the Chocolate device was a "corporate opportunity," which requires evidence that: (1) the opportunity is within the corporation's line of business; (2) the corporation has an interest or expectancy in the opportunity; (3) the corporation is financially able to exploit the opportunity; and (4) by taking the opportunity for his own, the corporate fiduciary is placed in a position inimical to his duties to the corporation, *Broz v. Cellular Info. Sys., Inc.*, 673 A.2d 148, 154–55 (Del. 1996).

Although the district court was required to have a general understanding of how Chocolate operated to determine if Chocolate fell within AngioScore's line of business, *see* J.A. 43–44 ("AngioSculpt and Chocolate, TriReme's device, are both angioplasty balloon catheters used to open occluded or narrowed blood vessels at lesion sites by inflating to compress plaque deposits against the vessel wall and then deflating for removal from the patient's body."), this does not create a "common nucleus of operative fact" because it is simply background information and not the "transaction or event on which the claims are based." *Wisey's #1 LLC*, 952 F. Supp. 2d at 190. Additionally, the fact that the same experts calculated the patent damages and opined on damages relating to the state-law claims is not an "operative fact" sufficient to confer jurisdiction.

Because the state-law claims only generally relate to the federal patent claim, a "common nucleus of operative fact" does not exist.[1] Accordingly, we find that the district

---

[1]    Because there is no common nucleus of operative fact between the state-law claims and the federal claim, the district court also lacks jurisdiction to hear the state-

court erred in exercising supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367(a).

III

Corporate Defendants also appeal the district court's denial of attorneys' fees under 35 U.S.C. § 285. Under § 285, a "court in exceptional cases may award reasonable attorney fees to the prevailing party." An "exceptional case" is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). On appeal, we review the district court's exceptional case determination under § 285 for an abuse of discretion. *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1347 (Fed. Cir. 2015).

The district court did not find the patent claim "exceptionally weak," in part because it survived summary judgment. J.A. 181. However, Defendants argue that they were entitled to summary judgment because claim vitiation defeated the application of the doctrine of equivalents. They assert, therefore, that because the district court's denial of summary judgment was premised on an incorrect view of the doctrine of equivalents, reversal of the denial of attorneys' fees is proper since "legal error invaded the district court's evaluation of whether AngioScore's patent infringement claim was 'exceptionally meritless.'" Pet. Br. at 59.

However, Corporate Defendants did not argue claim vitiation in their initial motion for summary judgment. Although Corporate Defendants sought leave to file a

law unfair competition claim under 28 U.S.C. § 1338(b). *See* 13D Charles Alan Wright, et al., FEDERAL PRACTICE AND PROCEDURE § 3582 (3d ed. 2015).

second motion for summary judgment to make this argument, the district court denied the request because it violated its Standing Order in Civil Cases.   J.A. 3353.1. The district court's failure to grant summary judgment on an argument that was never properly presented does not constitute a legal error.   Therefore, we find that the district court did not abuse its discretion in denying attorneys' fees under § 285.

## IV

For these reasons, we find that the district court improperly exercised supplemental jurisdiction over the state-law claims, but did not err in denying attorneys' fees.   Therefore, we reverse-in-part, affirm-in-part, vacate-in-part, and remand with instructions to dismiss the state-law claims for lack of subject matter jurisdiction.

**REVERSED-IN-PART, AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED**

**<u>PROOF OF SERVICE</u>**

The undersigned hereby certifies that on August 22, 2016, I caused the foregoing Petition for Rehearing *En Banc* to be filed with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF System.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


<u>/s/ Robert P. Feldman</u>